IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ROBERT AYZIN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) CIVIL ACTION NO. 1:17cv1151 |
| v. | ) ) COMPLAINT FOR |
| ORBITAL ATK, INC., RONALD R. FOGLEMAN, KEVIN P. CHILTON, ROXANNE J. DECYK, MARTIN C. FAGA, LENNARD A. FISK, ROBERT M. HANISEE, RONALD T. KADISH, TIG H. KREKEL, DOUGLAS L. MAINE, ROMAN MARTINEZ IV, JANICE I. OBUCHOWSKI, JAMES G. ROCHE, HARRISON H. SCHMITT, DAVID W. THOMPSON, and SCOTT L. WEBSTER, | ) VIOLATION OF FEDERAL ) SECURITIES LAWS ) ) ) ) ) ) ) |
| Defendants. | |

Plaintiff Robert Ayzin ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Orbital ATK, Inc. ("Orbital" or the "Company"), brings this action against the members of Orbital's Board of Directors collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a), Rule 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Section 20(a). Specifically, Defendants solicit the vote of common stockholders of Orbital in connection with the sale of the Company to Northrop Grumman Corporation ("Northrup Grumman") through a preliminary proxy statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2. On September 17, 2017, the Company and Northrop Grumman entered into a definitive agreement ("Merger Agreement") under which Northrop Grumman will acquire all of the outstanding common shares of Orbital in an all-cash transaction (the "Proposed Transaction"). If consummated, shareholders will receive $134.50 in cash per common share of Orbital. The Proposed Transaction has an equity value of approximately $7.8 billion

3. On October 2, 2017, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Preliminary Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants

have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of Orbital common shares.

9. Orbital is a Delaware corporation that develops, manufactures, and supplies aerospace and defense system products to the government of the United States and allied nations. The main products include launch vehicles and related propulsion systems, satellites and associated components and services, composite aerospace structures, tactical missiles, subsystems and defense electronics, and precision weapons, armament systems and ammunition. The Company maintains its principal executive offices at 45101 Warp Drive, Dulles, VA 20166. Orbital common stock trades on the New York Stock Exchange under the ticker symbol "OA."

10. Defendant Lennard A. Fisk ("Fisk") has served as a director of the Company since 2015.

11. Defendant Douglas L. Maine ("Maine") has served as a director of the Company since 2006.

12. Defendant Janice I. Obuchowski ("Obuchowski") has served as a director of the Company since 2015.

13. Defendant Harrison H. Schmitt ("Schmitt") has served as a director of the Company since 2015.

14. Defendant Kevin P. Chilton ("Chilton") has served as a director of the Company since 2015.

15. Defendant Roman Martinez ("Martinez") has served as a director of the Company since 2004.

16. Defendant Ronald T. Kadish ("Kadish") has served as a director of the Company since 2015.

17. Defendant Ronald R. Fogleman ("Fogleman") has served as the non-executive Chairman of the Company's Board since November 2009.

18. Defendant Scott L. Webster ("Webster") has served as a director of the Company since 2015.

19. Defendant Roxanne J. Decyk ("Decyk") has served as a director of the Company since 2010.

20. Defendant James G. Roche ("Roche") has served as a director of the Company since 2015.

21. Defendant Tig H. Krekel ("Krekel") has served as a director of the Company since 2010.

22. Defendant David W. Thompson ("Thompson") has served as President and Chief Executive Officer of the Company since February 2015. Defendant Thompson co-founded a predecessor to the Company, Orbital Sciences Corporation, in 1982.

23. Non-party Northrop Grumman is a global security, providing a wide array of security and defense systems to government and commercial clients. Northrop Grumman maintains its principal executive offices at 2980 Fairview Park Drive, Falls Church, Virginia 22042. Northrop Grumman common stock trades on the New York Stock Exchange under the ticker symbol "NOC."

24. Non-Party Neptune Merger, Inc. is a Delaware corporation and wholly-owned subsidiary of Northrop Grumman formed for the purpose of effectuating the Proposed Transaction.

## FURTHER SUBSTANTIVE ALLEGATIONS

25.     On September 18, 2017, the Company and Northrup Grumman issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> FALLS CHURCH and DULLES, Va. – Sept. 18, 2017 – Northrop Grumman Corporation (NYSE: NOC), a leading global security company, and Orbital ATK, Inc. (NYSE: OA), a global leader in aerospace and defense technologies, today announced they have entered into a definitive agreement under which Northrop Grumman will acquire Orbital ATK for approximately $7.8 billion in cash, plus the assumption of $1.4 billion in net debt. Orbital ATK shareholders will receive all-cash consideration of $134.50 per share. The agreement has been approved unanimously by the Boards of Directors of both companies. The transaction is expected to close in the first half of 2018 and is subject to customary closing conditions, including regulatory and Orbital ATK shareholder approval.
>
> "The acquisition of Orbital ATK is an exciting strategic step as we continue to invest for profitable growth. Through our combination, customers will benefit from expanded capabilities, accelerated innovation and greater competition in critical global security domains. Our complementary portfolios and technology-focused cultures will yield significant value creation through revenue synergies associated with new opportunities, cost savings, operational synergies, and enhanced growth. We look forward to welcoming Orbital ATK's talented employees to Northrop Grumman, and believe our combined strength will benefit our customers and shareholders," said Wes Bush, chairman, chief executive officer and president of Northrop Grumman.
>
> "We are very pleased to announce this agreement with Northrop Grumman. It reflects the tremendous value Orbital ATK has generated for our customers, shareholders and employees. The unique alignment in culture and mission offered by this transaction will allow us to maintain strong operational performance on existing programs while we pursue new opportunities that require the enhanced technical and financial resources of a larger organization. Our employees will also benefit from greater development and career opportunities as members of a larger, more diverse aerospace and defense enterprise. We will remain focused on operational excellence and execution during and after the transition into Northrop Grumman," said David Thompson, president and chief executive officer of Orbital ATK.
>
> Upon completion of the acquisition, Northrop Grumman plans to establish Orbital ATK as a new, fourth business sector to ensure a strong focus on operating performance and a smooth transition into Northrop Grumman. On a pro forma 2017 basis, Northrop Grumman expects to have sales in the range of $29.5 to $30 billion based on current guidance. Northrop Grumman expects the transaction to be accretive to earnings per share and free cash flow per share in

>the first full year after the transaction closes, and to generate estimated annual pre-tax cost savings of $150 million by 2020. Northrop Grumman has received fully committed debt financing and expects to put in place permanent financing prior to closing. Northrop Grumman remains committed to maintaining a solid investment grade credit rating and will use its strong cash flow to support debt reduction, while continuing to pay a competitive dividend and repurchase shares.

**The Proxy Misleads Orbital ATK Stockholders by Omitting Material Information**

26. On October 2, 2017, Orbital ATK filed the materially misleading and incomplete Proxy with the SEC. Designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a standalone entity as evidenced by the Company's financial projections, the financial analysis underlying the fairness opinion provided by Citigroup Global Markets, Inc. ("Citi"), and the process ultimately leading to the Merger Agreement.

*Material Omissions Concerning the Company's Financial Projections*

27. First, the Proxy discloses non-GAAP accounting metrics for projected financial information over the years 2017-2020: EBIT, EBITDA, Free Cash Flow, and Earnings Per Share. However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

28. The Proxy fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to GAAP measures, including (i) operating earnings; and (ii) stock-based compensation expense.

29. The Proxy fails to disclose the line items underlying unlevered free cash flow necessary to reconcile free cash flow to EBITDA, including capital expenditures.

30. The Proxy must disclose the necessary line items to reconcile these non-GAAP measures to well-understood GAAP financial metrics. Non-GAAP measures have no universally

understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

31.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

32.     On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.  S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.  The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

33.     The Company routinely discloses the line items necessary to reconcile these non-GAAP measures to GAAP in its quarterly and yearly financial reports. For example, in the Form 10-Q filed by the Company on August 4, 2017, the Company the line items for each metric affecting the cash flow of the company in its Condensed Consolidated Statements of Cash Flows, including Net Income, Depreciation and Amortization, Capital Expenditures, Stock-based Plans Expense, and other metrics used to calculate EBIT, EBITDA, and Free Cash Flow.

34.     Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Orbital stockholders.

35. Furthermore, the Proxy omits management's projections of unlevered, after-tax free cash flows, as used by Citi in performing a *Discounted Cash Flow Analysis*, as well as the definition of unlevered, after-tax free cash flows used by Citi.

36. These projections were provided to Citi, and used by Citi, for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction. Because these analyses were presented to the Orbital stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

### *Material Omissions Concerning Citi's Financial Analyses*

37. The Proxy describes Citi's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Orbital's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Orbital's stockholders.

38. With respect to Citi's *Selected Transactions Analysis*, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by Citi, as well as any benchmarking analyses Citi performed for Orbital in relation to the target companies. Without such information, Orbital's stockholders are unable to determine how the multiples used in determining Orbital's value compare to the other companies. As a result, stockholders are unable to assess whether Orbital utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Orbital**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Orbital is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Orbital within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Orbital and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the

Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 13, 2017

    /s/ Elizabeth K. Tripodi
ELIZABETH K. TRIPODI (VSB #73483)
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Telephone:	(202) 524-4290
Facsimile:	(202) 333-2121
Email: etripodi@zlk.com

*Attorneys for Plaintiff*